# THE SUPREME COURT, STATE OF WYOMING

# 2022 WY 87

**APRIL TERM, A.D. 2022**

**July 6, 2022**

ROBERT L. GILL,

**Appellant**
**(Petitioner),**

v.                                                          S-21-0230

ELIZABETH LOCKHART,

**Appellee**
**(Respondent).**

*Appeal from the District Court of Teton County*
*The Honorable Daniel L. Forgey, Judge*

*Representing Appellant:*
>   William P. Schwartz and Leah C. Schwartz of Ranck & Schwartz, LLC.  Argument
>   by Ms. Schwartz.

*Representing Appellee:*
>   Weston W. Reeves and Anna Reeves Olson of Park Street Law Office.  Argument
>   by Mr. Reeves.

*Before FOX, C.J., and KAUTZ, BOOMGAARDEN, GRAY, and FENN, JJ.*

**NOTICE:  This opinion is subject to formal revision before publication in Pacific Reporter Third.  Readers are requested to notify the Clerk of the Supreme Court, Supreme Court Building, Cheyenne, Wyoming 82002, of any typographical or other formal errors so that correction may be made before final publication in the permanent volume.**

**FENN, Justice.**

[¶1]     Robert Gill appeals from the district court's order denying his motion to enforce the judgment confirming arbitration awards entered against his sister, Elizabeth Lockhart. He contends the district court's finding that he failed to prove some of his damages was clearly erroneous. He also asserts the district court abused its discretion by not allowing him to present certain evidence either at the evidentiary hearing or after the district court announced its oral ruling. We affirm.

## ISSUES

[¶2]     Mr. Gill raises two issues, which we rephrase as follows:

    I.    Is the district court's finding that Mr. Gill failed to meet his burden of proving his damages related to Fish Creek's invoices clearly erroneous?

    II.    Did the district court abuse its discretion by not allowing Mr. Gill to present additional evidence concerning Fish Creek's work?

Ms. Lockhart raises an additional issue which we rephrase as follows:

    III.    Was Mr. Gill required to present expert testimony to satisfy his burden of proving the infrastructure costs were reasonable?

## FACTS

[¶3]     Mr. Gill and Ms. Lockhart are the beneficiaries of the Robert Bruce Porter Trust (the "Porter Trust"). The Porter Trust was a generation-skipping trust created by the parties' maternal grandfather. The Porter Trust owned land in Teton County that had been part of the Hereford Ranch. In the early 1990s, the County was enacting changes to its land development regulations that would have impacted how the property could be used, so the Porter Trust decided to use the land to create the Owl Creek Subdivision. In Phase I of the subdivision, the Porter Trust installed utilities and paved roads to provide access to the lots towards the eastern side of the subdivision.

[¶4]     Phase II of the Owl Creek Subdivision involved installing utilities and extending one of the roads in the subdivision, Reed Drive, to service the nine lots located towards the western side of the subdivision. The Porter Trust did not complete Phase II of the subdivision in the 1990s because the property values in Teton County were significantly lower at that time, and finishing the subdivision was too large of a financial commitment. However, the Porter Trust had an obligation to complete the infrastructure for Phase II, which was guaranteed by giving a letter of credit to the Teton County Planning Department.

1

This letter of credit had to be renewed on an annual basis.

[¶5]    Under the terms of the Porter Trust, the assets had to be dispersed after the parties' maternal aunt passed away in 2005.[1]  The parties could not reach an agreement about how the assets should be divided, and in 2007, they agreed to participate in binding arbitration. The parties retained Mr. Tom Toner of the law firm Yonkee and Toner to serve as their arbiter.  Between 2007 and 2010, Mr. Toner conducted multiple hearings and issued five arbitration awards.  This case centers around the arbitration award contained in the *Order After December 11-12, 2008 Hearing* (*December Order*), which governs the parties' rights and obligations regarding the Owl Creek Subdivision.

[¶6]    During the arbitration, the unsold lots in Phase II of the subdivision were divided by the parties.  Ms. Lockhart ended up owning five of these lots, and the remaining four lots were awarded to Mr. Gill.  The *December Order* recognized the parties were obligated to complete Phase II of the subdivision, and it provided:

> Either party can complete at any time the remaining infrastructure in Phase II of Owl Creek Subdivision for which the trust has given its letter of credit to the Teton County Planning Department.  Mr. Gill and Ms. Lockhart shall each pay one-half of the reasonable costs of completing the installation of the infrastructure required by Teton County.

The *December Order* did not contain a deadline for completing Phase II, nor did it set forth a method for calculating the reasonable infrastructure costs.

[¶7]    The Porter Trust also owned a 35-acre parcel of land, referred to as Lot 1, which was adjacent to the Owl Creek Subdivision but was not included in the plat.  Both parties asked for Lot 1 during the arbitration.  Mr. Toner ultimately awarded it to Mr. Gill.  In the *December Order,* Mr. Toner also awarded Mr. Gill an easement between Lots 54 and 55 to access Lot 1.

[¶8]    Neither party took any steps to complete Phase II until the fall of 2010 when James Jensen approached Mr. Gill about buying Lots 54 and 55.  In the contract to sell these lots to Mr. Jensen, Mr. Gill undertook the obligation to complete Reed Drive.[2]  Mr. Jensen did not want his two lots bisected by the easement to access Lot 1, so the sale of Lots 54 and 55 to Mr. Jensen was contingent on Mr. Gill moving the easement from between Lots 54 and 55 to the southern boundary of Lot 54.  The easement would then have run along the boundary of Lot 53, which was owned by Ms. Lockhart.  Ms. Lockhart opposed relocating

---

[1] Their mother passed away in 1994.

[2] Mr. Gill also sold Lot 56 to John and Michelle Farrell in August 2011, and he was obligated to complete Reed Drive under this contract.

2

the easement to that location. She filed an administrative appeal challenging the portion of the grading and erosion control permit the County had issued that would have allowed Mr. Gill to build the driveway adjacent to Lot 53. To resolve the dispute, Mr. Jensen initially offered to return Lots 54 and 55 to Mr. Gill and purchase Lot 1 instead, which would have allowed Lot 1's access easement to remain where it was contemplated by the *December Order.* However, Mr. Jensen reneged on his offer to purchase Lot 1 from Mr. Gill and purchased Lot 53 from Ms. Lockhart instead. After purchasing Lots 53, 54, and 55, Mr. Jensen ultimately agreed to move the location of Lot 1's access easement to the northern end of Lot 55, which resolved the issue.

[¶9] After signing the contracts with Mr. Jensen and the Farrells, Mr. Gill hired contractors to complete the work on Phase II and to install utilities and a driveway across the easement on Lot 55 to access Lot 1.[3] Jeff Bates with Jorgensen Engineering was hired to complete the engineering work. Thomas Campbell with Biota was hired to complete the environmental assessments for the subdivision. Fish Creek Excavation was hired to perform some of the dirt work for the project. Mr. Gill also hired Lower Valley Power and Light[4] to install the power to the Owl Creek Subdivision and Lot 1. Jorgensen Engineering submitted a bid to serve as a construction manager, but Mr. Gill decided to fulfill this role himself to decrease costs.

[¶10] Mr. Gill paid all the invoices from the contractors out of his own pocket. He did not communicate with Ms. Lockhart about the costs to complete Phase II during construction. Instead, Mr. Gill, his secretary, and his attorney reviewed the invoices and created a spreadsheet showing the charges from each contractor. They attempted to separate work that benefited Mr. Gill's Lot 1 from work that benefitted both parties' lots in the subdivision. Mr. Gill did not charge Ms. Lockhart for the installation of the utilities for Lot 1 or for the environmental assessment that was performed to determine the developability of Lot 1. At this time, Mr. Gill also did not charge Ms. Lockhart for the driveway that was built to access Lot 1.

[¶11] On August 30, 2012, Mr. Gill's attorney emailed Ms. Lockhart's attorney a copy of the spreadsheet outlining the costs incurred for the first part of Phase II, which the parties referred to as the First Billing. Mr. Gill asked Ms. Lockhart to pay her half of the costs, which he had calculated to be $252,711.42. In October 2012, Ms. Lockhart tendered a payment of $200,000.00. She proffered no explanation for why this payment differed from the amount requested in the First Billing. When the First Billing was sent to Ms. Lockhart, Mr. Gill expected there to be some additional costs for utility work, but he did not expect those costs to be substantial. However, the cost and scope of the project subsequently

---

[3] Building the driveway to Lot 1 was not part the expansion of Reed Drive that was required for Phase II. At that time, building a driveway to access Lot 1 would only have benefitted Mr. Gill and any future purchaser of Lot 1.

[4] This company subsequently changed its name to Lower Valley Energy.

changed when the County required Mr. Gill to create wetlands.

[¶12] The expansion of Reed Drive impacted certain existing wetlands. Teton County requires that for every acre of wetlands that is disturbed or destroyed by a construction project, two acres of new wetlands must be created. When the Porter Trust completed Phase I, it created some extra wetlands in the subdivision, which the parties referred to as "banked wetlands." Mr. Gill initially planned to use these "banked wetlands" to avoid having to create new wetlands when he completed Phase II. Although Teton County originally approved the plans for Phase II without requiring the creation of new wetlands, the County changed its position.[5] The County ultimately required Mr. Gill to create 13,638 square feet of new wetlands. Based on Mr. Campbell's recommendation, Mr. Gill decided to create the wetlands on Lot 1 because it was the lot that would sustain a much smaller impact than the other lots, so it was an easy solution.[6] Biota designed the wetlands and installed the plants, and Fish Creek completed the dirt work to prepare for the installation of the plants. The wetlands were created in the summer of 2013, which significantly increased the cost of completing Phase II.

[¶13] On September 14, 2015, Mr. Gill's attorney sent Ms. Lockhart's attorney a second spreadsheet setting forth the costs for the rest of the work on Phase II, which the parties referred to as the Second Billing. He calculated Ms. Lockhart's half of these invoices to be $76,543.80. He gave her credit for the payment she made towards the First Billing and asked her to remit an additional $129,255.22 for her total remaining portion of the infrastructure costs. Despite repeated demands, Ms. Lockhart did not make any additional payments.

[¶14] On November 2, 2017, Mr. Gill filed a petition asking the district court in Teton County to confirm two of the arbitration awards and enter judgment in conformance with those awards. The parties subsequently stipulated all five arbitration awards should be confirmed by the district court, and on January 12, 2018, the district court entered an order and judgment stating the arbitration awards were "confirmed and judgment is entered in conformance with the awards as provided in W.S. § 1-36-113." The judgment did not contain a specific amount Ms. Lockhart was required to pay Mr. Gill for the Owl Creek infrastructure costs.

---

[5] Ms. Lockhart appealed the grading and erosion control permit for the driveway to access Lot 1. In her notice of appeal, Ms. Lockhart questioned Mr. Gill's use of banked wetlands. After receiving the notice of appeal, Susan Johnson from the Teton County Planning Department engaged in discussions with the County Attorney, Nicole Krieger, about the legality of allowing Mr. Gill to use the banked wetlands. Ms. Johnson was concerned that using the banked wetlands would impact the property rights of the individuals who now owned the lots where the banked wetlands had been built. The County's change in position was also impacted by the Army Corps of Engineers' refusal to approve the use of banked wetlands.

[6] Although Lot 1 was not officially part of the Owl Creek Subdivision, the County allowed the wetlands mitigation to be performed on Lot 1 because it was adjacent to the subdivision and there were no on-site mitigation possibilities within the subdivision.

4

[¶15] On September 25, 2019, Mr. Gill filed a motion to enforce the judgment. He asked the district court to order Ms. Lockhart to pay $129,255.22 plus post-judgment interest. In response to the motion, Ms. Lockhart asserted the parties disagreed about the amount due under the judgment. She also claimed Mr. Gill improperly attempted to move his Lot 1 access easement, and she should be entitled to an offset for her time and the costs she incurred to appeal that action. She further asserted Mr. Gill's conduct constituted a material breach of the *December Order,* which relieved her from further performance of her obligations under that order.

[¶16] The district court set the matter for a two-day evidentiary hearing. The scheduling order set deadlines for filing dispositive motions and expert witness designations but did not set a deadline for disclosing fact witnesses or exhibits. Mr. Gill filed his expert witness designation on May 1, 2020. He designated Jeff Bates from Jorgenson Engineering, Thomas Campbell from Biota, and Tom Evans from Sotheby's International Realty as non-retained experts. The designation did not list any witnesses from Fish Creek Excavation or Lower Valley.

[¶17] Ms. Lockhart filed a motion to strike Mr. Gill's expert disclosures. She asserted the designation was deficient because it did not provide a summary of facts and opinions about which the witnesses were expected to testify. Mr. Gill asserted his designation complied with the rules and gave ample notice of the scope of the anticipated testimony. The district court held a hearing on July 16, 2020. The district court denied the motion to strike, but it reminded Ms. Lockhart she could object at trial to any testimony that went beyond the scope of the designations.

[¶18] Mr. Gill filed pretrial disclosures pursuant to the Wyoming Rules of Civil Procedure (W.R.C.P.), Rule 26(a)(3), which included witness and exhibit lists. Although Mr. Gill listed several witnesses, he did not list anyone associated with Fish Creek Excavation or Lower Valley. Mr. Gill filed two amended exhibit lists but did not file an amended witness list.

[¶19] Ms. Lockhart filed a motion in limine regarding Mr. Gill's expert witness designation. She asserted expert testimony was required to establish the reasonable amount of the infrastructure costs in this case, and as previously argued, Mr. Gill had not properly disclosed his experts. The district court declined to rule on the motion in limine at the beginning of the hearing, choosing instead to handle objections to the proposed testimony as it was offered.

[¶20] A two-day evidentiary hearing was held on September 23–24, 2020. In his opening statement, Mr. Gill informed the district court he had changed his method for calculating Ms. Lockhart's share of the infrastructure costs, and he was seeking a greater amount of damages than he had set forth in his motion to enforce the judgment. Mr. Gill originally

5

agreed to pay all the costs associated with the driveway that provided access to Lot 1. However, he was now asking Ms. Lockhart to pay for half of that driveway because he claimed the only purpose for building that driveway was to provide access to the wetlands mitigation site.[7] He asked the district court to divide the invoices in half, with a few adjustments,[8] and order Ms. Lockhart to pay half of the total hard costs of the project. He asked the court to award him what he termed "administrative fees," which were intended to compensate him for the time he spent overseeing the project, the cost of his secretary's time putting together the First and Second Billing, and the fees his attorney charged him for project administration. Mr. Gill asked the court to order Ms. Lockhart to pay a total of $195,450, in addition to the $200,000 she had already paid. This was $66,194.78 more than Mr. Gill had asked Ms. Lockhart to pay in the First and Second Billings and his motion to enforce the judgment.

[¶21] At the hearing, Mr. Gill offered his own testimony and that of Susan Johnson from the Teton County Planning Department, Mr. Campbell from Biota, and Mr. Bates from Jorgensen Engineering to support his contention the infrastructure costs he was seeking to recover were reasonable, necessary, and required by Teton County. After these witnesses testified, Mr. Gill asked to call Rick Hunt, the former owner of Fish Creek Excavation, as a rebuttal witness.

[¶22] The district court expressed confusion about this request and stated: "I think you could still call him as your witness before you rest." However, Mr. Gill's counsel indicated Mr. Hunt had not been listed as a witness, so he fell in the rebuttal category. Ms. Lockhart objected to a "rebuttal" witness being called when she had not put on any evidence. The parties then conferred off the record, and Ms. Lockhart rested without calling any witnesses. The district court found Mr. Hunt could not properly be called as a rebuttal witness because Ms. Lockhart had not put on any evidence. The district court allowed Mr. Gill to make two offers of proof as to Mr. Hunt's proposed testimony.[9] The district court clarified it had not prevented Mr. Gill from calling Mr. Hunt in his case-in-chief, and that was a decision Mr. Gill's attorney had made. Mr. Hunt was then excused without testifying.

[¶23] After taking the matter under advisement, the district court announced its oral ruling on August 2, 2021. The district court found Ms. Lockhart was liable for a portion of the Jorgensen Engineering Invoices in the amount of $29,859.26, a portion of the Biota invoices in the amount of $23,987.09, and half of Lower Valley Energy's invoices, which

---

[7] Mr. Jensen ultimately built his home on Lot 53, and he used a different driveway to access his home.

[8] These adjustments related to the environmental assessment and the installation of utilities for Lot 1. Mr. Gill excluded these costs from the First Billing, and he maintained his original position that these costs only benefitted Lot 1 and were not chargeable to Ms. Lockhart.

[9] Mr. Hunt would have explained why the costs of the project exceeded his initial estimate, and why the work he performed was justified. He would also have opined that his rates were reasonable and in line with those charged by his competitors at that time.

6

it calculated to be $6,395.62.

[¶24]   While the district court determined Mr. Gill paid all of Fish Creek's invoices, and some of those costs were related to the Phase II development, it found the state of the evidence regarding those costs was problematic.  The district court stated:

> Generally, what Mr. Gill seeks to have Ms. Lockhart reimburse him for has been a moving target.  His approach to this at trial is much different than what he claimed at other times prior to trial, which is reflected in some of the exhibits the Court received.  The invoices Mr. Gill submitted to the Court in support of his claims, including Fish Creek's invoices, contained work that Mr. Gill now agrees Ms. Lockhart should not pay for.  The work on and the resulting billing for these projects is commingled with work that Mr. Gill claims Ms. Lockhart does owe him for.  Unlike Jorgensen and Biota, no one testified on behalf of Fish Creek as to what work it performed in each phase of this project, why that work was performed, how that work is reflected in Fish Creek's invoices and other exhibits, or as to the reasonableness of what Fish Creek billed.  That context is vital to the Court in considering and deciding what Ms. Lockhart owes Mr. Gill.  The invoices themselves simply are not helpful or persuasive in this regard and have little evidentiary weight or value.  The attempts by Mr. Gill, Mr. Campbell, and Mr. Bates to provide some context made things more confusing as did the spreadsheet attached to the invoices since it seems to have been prepared based on an approach Mr. Gill did not actually take at trial.

Although the district court felt Ms. Lockhart probably owed Mr. Gill something for the work Fish Creek performed, it determined it could not "reduce this to a particular dollar amount that Ms. Lockhart owes Mr. Gill."  The district court concluded Mr. Gill had not shown Ms. Lockhart owed him more than the $200,000 she already paid, and it denied his motion to enforce the judgment.[10]

[¶25]   After the district court announced its oral ruling, but before a written order had been entered, Mr. Gill filed a motion to present additional evidence.  He argued the district court was free to hear and consider whatever additional evidence it deemed necessary to enforce

---

[10] The district court did not award Mr. Gill any of the administrative fees he had requested, and Mr. Gill did not appeal that ruling.  The district court did not award Ms. Lockhart an offset for the fees she incurred in appealing the relocation of the easement, nor did it find Mr. Gill had breached the *December Order* when he attempted to move the easement.  Ms. Lockhart did not appeal either of these rulings.

its judgment and finally resolve the proceedings. Mr. Gill suggested the district court could either hold another hearing and receive testimony from Mr. Hunt or allow him to testify via affidavit. He asserted the district court's remaining questions about Fish Creek's invoices did not render the judgment moot or foreclose its enforcement, and the judgment would remain at issue if the court did not allow him to present additional evidence. Mr. Gill attached an affidavit from Mr. Hunt to his motion.

[¶26] The district court entered an order denying the motion to enforce the judgment. That order incorporated the district court's oral ruling by reference. The district court entered an order denying the motion to allow additional evidence. That order did not contain any explanation for the district court's decision.[11] This appeal timely followed.

## STANDARD OF REVIEW

[¶27] Mr. Gill challenges some of the district court's factual findings. When reviewing a district court's factual findings, we apply the following standard of review:

> The factual findings of a judge are not entitled to the limited review afforded a jury verdict. While the findings are presumptively correct, the appellate court may examine all of the properly admissible evidence in the record. Due regard is given to the opportunity of the trial judge to assess the credibility of the witnesses, and our review does not entail weighing disputed evidence. Findings of fact will not be set aside unless the findings are clearly erroneous. A finding is clearly erroneous when, although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed.

*Davis v. Harmony Dev., LLC*, 2020 WY 39, ¶ 31, 460 P.3d 230, 240 (Wyo. 2020) (quoting *Ekberg v. Sharp*, 2003 WY 123, ¶ 10, 76 P.3d 1250, 1253 (Wyo. 2003)). A district court's findings may not be set aside because we would have reached a different result. *Davis,* ¶ 31, 460 P.3d at 240 (quoting *Piroschak v. Whelan*, 2005 WY 26, ¶ 7, 106 P.3d 887, 890 (Wyo. 2005)).

[¶28] Mr. Gill challenges the district court's decision not to allow Mr. Hunt to testify both at the evidentiary hearing and after the district court had announced its oral ruling. The Wyoming Rules of Evidence give the trial court considerable discretion to determine

---

[11] Ms. Lockhart's counsel submitted a proposed order, and the district court crossed out the proffered explanation for the ruling, which was "because, among other grounds, Mr. Rick Hunt was not listed as a witness by any party."

whether to allow the presentation of particular evidence, and they require the trial court to exercise reasonable control over the mode and order of interrogating witnesses. *Case v. Outback Pipe Haulers,* 2007 WY 181, ¶ 11, 171 P.3d 514, 517 (Wyo. 2007) (citing *McCabe v. R.A. Manning Constr. Co., Inc.*, 674 P.2d 699, 712 (Wyo. 1983)). "The admission of rebuttal evidence lies within the sound discretion of the trial court and an appellate court will not interfere except in cases of clear abuse of discretion." *Parker v. Cook*, 2022 WY 3, ¶ 5, 501 P.3d 1253, 1255 (Wyo. 2022) (quoting *United States v. Walton*, 552 F.2d 1354, 1366 (10th Cir. 1977)). Judicial discretion "is composite of many things, among which are conclusions drawn from objective criteria; it means a sound judgment exercised with regard to what is right under the circumstances, and without doing so arbitrarily or capriciously." *Lund v. Lund,* 2022 WY 2, ¶ 25, 501 P.3d 1222, 1227 (Wyo. 2022) (citing *Saunders v. Saunders*, 2019 WY 82, ¶ 10, 445 P.3d 991, 996 (Wyo. 2019)). A court does not abuse its discretion "unless it acts in a manner which exceeds the bounds of reason under the circumstances. In determining whether there has been an abuse of discretion, the ultimate issue is whether or not the court could have reasonably concluded as it did." *Parker*, 2022 WY 3, ¶ 4, 501 P.3d at 1255 (quoting *Clark v. Gale*, 966 P.2d 431, 435 (Wyo. 1998)).

[¶29] Mr. Gill challenges the district court's allocation of the burden of proof. Whether the district court applied the correct burden of proof is a question of law which we review de novo. *Wise v. Ludlow*, 2015 WY 43, ¶ 19, 346 P.3d 1, 7 (Wyo. 2015).

## DISCUSSION

[¶30] Wyoming's Uniform Arbitration Act, Wyo. Stat. Ann. §§ 1-36-101 through 1-36-119 (LexisNexis 2021), provides for the confirmation of an arbitration award by a district court that has jurisdiction over the parties. *See* Wyo. Stat. Ann. §§ 1-36-102, 1-36-113 (LexisNexis 2021). "The statute directs the court to confirm an award unless it is petitioned to vacate or modify the award." *Stewart Title Guar. Co. v. Tilden*, 2003 WY 31, ¶ 6, 64 P.3d 739, 741 (Wyo. 2003). The purpose of confirming an award is to provide a judgment that can be enforced through a court proceeding. *Id.* at ¶ 7, 64 P.3d at 741 (citing *Kutch v. State Farm Mut. Auto Ins. Co.*, 960 P.2d 93, 98–99 (Colo. 1998)). Once the court has entered a judgment confirming the arbitration award, the judgment can be enforced in the same manner as any other judgment. Wyo. Stat. Ann. § 1-36-116 (LexisNexis 2021).

[¶31] In this case, pursuant to the stipulation of the parties, the district court entered an order confirming the arbitration awards and entered judgment in conformance with those awards. While the district court confirmed the arbitration awards, it merely required each party to "pay one-half of the reasonable costs of completing the installation of the infrastructure [for Phase II of Owl Creek] required by Teton County." Neither the *December Order* nor the district court's judgment confirming the awards set forth a specific amount either party was required to pay for the completion of Phase II.

[¶32]  "Courts have inherent power to enforce their own judgments and should see to it that such judgments are enforced when they are called upon to do so." *Ultra Res., Inc. v. Hartman*, 2015 WY 40, ¶ 10, 346 P.3d 880, 886–87 (Wyo. 2015) (quoting *Hurd v. Nelson*, 714 P.2d 767, 771 (Wyo. 1986)).  Where the terms of a judgment are ambiguous or indefinite, the court that entered the judgment has the inherent power to interpret or clarify it. *Ultra Res., Inc.*, ¶ 11, 346 P.3d at 887 (citing 46 Am. Jur. 2d. *Judgments* § 73 (2015); *Ladwig v. Chatters*, 623 N.W. 2d 266, (Minn. Ct. App. 2001)).  To interpret or clarify a judgment, the court may take additional evidence at a post-judgment hearing to effectuate the original intent of the order. *Ultra Res., Inc.,* ¶ 14, 346 P.3d at 887 (citing *Eddy v. First Wyo. Bank*, 713 P.2d 228, 235 (Wyo. 1986)).  In this case, the district court correctly determined it needed to hear additional evidence to rule on the motion to enforce.  We must decide if the district court correctly found Mr. Gill failed to meet his burden of proof about what costs Ms. Lockhart owed under the judgment, and whether the district court abused its discretion when it excluded certain evidence during and after the post-judgment hearing.

### I.      Did Mr. Gill meet his burden of proving his damages related to Fish Creek's invoices?

[¶33]  Mr. Gill asserts once he had presented prima facie evidence supporting the amount of costs he claimed Ms. Lockhart owed under the judgment, the burden should have shifted to Ms. Lockhart to come forward with evidence that either the work was not required, or the costs were not reasonable.  Ms. Lockhart asserts, as in any trial where the movant is seeking an award of money, Mr. Gill had the burden of proving his claim and establishing his damages to a reasonable degree of certainty.  We have yet to address which party has the burden of proof in actions brought to interpret or clarify a vague or indefinite judgment. This case is unlike other post-judgment cases where the district court is tasked with interpreting a vague term in an otherwise clear judgment.  Instead, this case poses a unique set of circumstances, where the amount owed by Ms. Lockhart had not been reduced to a specific amount before the judgment was entered.

[¶34]  Generally, a plaintiff has the burden of producing evidence to prove his damages to a reasonable degree of certainty. *Mantle v. North Star Energy & Constr. LLC*, 2019 WY 29, ¶ 78, 437 P.3d 758, 786 (Wyo. 2019) (quoting *Acorn v. Moncecchi*, 2016 WY 124, ¶ 76, 386 P.3d 739, 761 (Wyo. 2016)).  In cases such as this one, where the amount of damages has not been determined before the entry of the judgment, it makes sense to apply a similar burden of proof.  Therefore, we hold, absent some statutory authority to the contrary,[12] the party seeking to enforce a vague or indefinite judgment has the burden of

---

[12] In *Ultra Resources*, we acknowledged the statutory procedure in the Declaratory Judgment Act provides the trial court, when faced with a petition for further relief pursuant Wyo. Stat. Ann. § 1-37-110, will require the defendant to show cause why relief should not be granted. 2015 WY 40, ¶ 27, 346 P.3d at 891.  However, the plaintiffs in *Ultra Resources* chose not to follow the statutory procedure and instead filed a motion to enforce the declaratory judgment under the court's inherent equitable powers. *Id.* at ¶¶ 27–28, 346 P.3d at

proving the cause of action and the material allegations on which the action is based. *See* 47 Am. Jur. 2d *Judgments* § 760 (2022). Therefore, the district court correctly assigned the burden of proof to Mr. Gill. We must now decide whether Mr. Gill met his burden of showing Fish Creek's invoices reflected the reasonable costs of the Phase II infrastructure work that was required by Teton County. We conclude he did not.

[¶35] While Mr. Gill was able to testify about certain aspects of Fish Creek's work, he was unable to answer specific questions about some of that work, and portions of his testimony created confusion about the nature and scope of Fish Creek's work. Mr. Gill testified he went out to the jobsite several times a week to oversee Fish Creek's work and answer questions. He testified Fish Creek initially submitted a bid to complete the Reed Drive extension, but Fish Creek did not ultimately build the extension. Instead, Fish Creek completed the dirt work and grading for the wetlands remediation work and built the driveway to access Lot 1. The parties sometimes referred to the Lot 1 access driveway as the "Jensen driveway," even though Mr. Jensen did not own Lot 1 at the time the driveway was built and it cannot be used to access Mr. Jensen's home.[13] Mr. Gill testified the driveway was built exclusively to create access to the wetlands mitigation site, but Mr. Jensen and others may be using the driveway to access Lot 1. Mr. Gill admitted he had originally represented he would be solely responsible for the costs of building this driveway. However, he decided shortly before the hearing Ms. Lockhart should pay for half of these costs because the wetlands mitigation work was necessary to complete the infrastructure for Phase II. When the district court asked him specific questions about the work that had been performed, Mr. Gill repeatedly said he was having difficulty remembering all the details of the work.

[¶36] Mr. Campbell's testimony created additional questions about Fish Creek's work. Mr. Campbell testified Biota was in somewhat of a supervisory role over Fish Creek during the creation of the wetlands. When asked specific questions about Fish Creek's invoices, he could not provide answers without guessing or speculating. His testimony also created confusion about whether the driveway to access Lot 1 was built exclusively to access the wetlands mitigation area or if there were in fact two separate roads that provided access to Lot 1.

[¶37] Similarly, while Mr. Bates was able to provide some information about Fish Creek's work, his testimony left certain issues unresolved. Contrary to Mr. Gill's testimony that Fish Creek did not build the Reed Drive extension, Mr. Bates testified Fish Creek

---

891. We noted further relief under the Declaratory Judgments Act could be granted through a variety of procedural mechanisms. *Id.* at ¶ 29, 346 P.3d at 892. However, we did not specifically address the allocation of the burden of proof in that case.

[13] Mr. Jensen eventually purchased Lot 1. However, no home has been constructed on Lot 1, and Mr. Gill testified this driveway only leads to the wetlands area. Mr. Jensen also purchased Lot 52 from Ms. Lockhart. After purchasing these lots, Mr. Jensen owned four of the lots in Phase II of the Owl Creek Subdivision and Lot 1.

performed some of the dirt work to expand Reed Drive, and he made onsite visits to observe and monitor Fish Creek's work. He then admitted he had not served as the general contractor for this project, and that the role was performed by Mr. Gill. Mr. Bates provided extensive testimony about some of the changes made during the construction of Reed Drive, such as Teton County requiring the creation of new wetlands and the decision to replace three timber bridges with eco-arches. He testified these changes necessitated obtaining additional fill material, which meant pit run had to be trucked in from an outside source, increasing the cost of the project. However, Mr. Bates could not clarify the questions about the Lot 1 driveway because it was constructed after his tenure on the project. Mr. Bates testified his work on the project ended in October 2012, which was before much of the work reflected in Fish Creek's invoices in the Second Billing was completed. When asked specific questions about where some of the work in Fish Creek's invoices had been performed, Mr. Bates could not provide an answer without speculating.

[¶38] No one from Fish Creek testified at the hearing. Therefore, there was no one who could explain what work was performed in each phase of the project, why that work was performed, or how that work was reflected in the invoices. Although Mr. Gill, Mr. Campbell, and Mr. Bates attempted to provide context for Fish Creek's invoices, they were unable to answer specific questions about the invoices without having to guess or speculate. Due to the length of time between when the work was performed and the motion to enforce was filed, they struggled to recall details about the work. The presentation of the evidence was also complicated by the fact Mr. Gill chose to change his method for calculating Ms. Lockhart's share of the costs on the eve of the hearing. He asked the district court to award him costs for which he had previously agreed to be solely responsible.

[¶39] Due to the confusing nature of the evidence about Fish Creek's invoices, the district court would have been required to engage in speculation or conjecture to arrive at a damages award. "A court may not resort to speculation or conjecture in determining the proper amount to award." *Mantle*, 2019 WY 29, ¶ 78, 437 P.3d at 786 (quoting *Acorn*, 2016 WY 124, ¶ 76, 386 P.3d at 761). We are not left with the definite and firm conviction the district court made a mistake when it determined Mr. Gill had not met his burden of proof regarding Fish Creek's work. Therefore, the district court's finding that Mr. Gill had failed to meet his burden of proving the amount Ms. Lockhart owed him for Fish Creek's work was not clearly erroneous.

## II.     *Did the district court abuse its discretion by not allowing Mr. Gill to present additional evidence concerning Fish Creek's work?*

[¶40] Mr. Gill challenges several of the district court's evidentiary rulings. Mr. Gill asserts the district court abused its discretion when it did not allow Mr. Bates and Mr. Campbell to offer expert testimony about Fish Creek's work. He asserts the district court abused its discretion when it did not allow Mr. Hunt to testify either as a rebuttal witness or in his case-in-chief. Finally, Mr. Gill argues the district court abused its discretion when

12

it did not allow Mr. Hunt to testify after it had announced its oral ruling. We address each of these arguments in turn.[14]

### A. Should Mr. Bates and Mr. Campbell have been allowed to offer expert testimony about Fish Creek's work?

[¶41] Mr. Gill asserts Mr. Bates and Mr. Campbell should have been allowed to testify as experts regarding the reasonableness of Fish Creek's invoices. He claims the district court abused its discretion when it sustained Ms. Lockhart's objections to this proposed testimony.

[¶42] Mr. Campbell was asked to opine about whether the rates reflected in Fish Creek's invoices were "reasonable and related to Fish Creek's standard and customary rates." Ms. Lockhart objected on the grounds this testimony was outside the scope of the witness's expert designation. The district court sustained the objection. A review of Mr. Campbell's expert designation shows he was not designated to offer any expert testimony about Fish Creek's work. The district court could have reasonably concluded this testimony was not properly disclosed, and it did not abuse its discretion when it sustained the objection.

[¶43] Mr. Bates's expert designation stated he "may" testify about "the nature and reasonableness of the work performed by Jorgensen and other contractors such as Fish Creek Excavation," and the "reasonableness and necessity of costs charged for work performed by Jorgenson Engineering, Fish Creek Excavation, and Lower Valley Energy." The designation did not contain any further summary of Mr. Bates's opinions, nor did it disclose the basis for his opinions, as required by the scheduling order. Although Ms. Lockhart asked the district court to rule on the sufficiency of this disclosure before the hearing, the district court declined to do so, choosing instead to rule on the objections as they were made.

[¶44] Mr. Gill only asked Mr. Bates two questions about Fish Creek's invoices that delved into the realm of expert testimony. The first question was withdrawn by counsel before the district court could rule on Ms. Lockhart's objection. The second question asked Mr. Bates if "the Fish Creek invoice total [was] a surprising number to [him] when [he] saw it in . . . preparation for this case[.]" This question first sparked an objection on relevance grounds and then on foundation. Before the district court could rule on either of these objections, Ms. Lockhart made a third objection on the grounds the question sought undisclosed expert testimony. The district court sustained the objection, without indicating upon which of the three grounds its ruling was based.

---

[14] Mr. Gill asserts the district court could have called Mr. Hunt as a witness on its own motion pursuant to W.R.E. 614. However, Mr. Gill did not raise this issue below. We generally will not consider issues not raised below, and we decline to do so here. *See Williams v. Tharp*, 2017 WY 8, ¶¶ 10-11, 388 P.3d 513, 517 (Wyo. 2017).

[¶45]  We have held: "error based on a trial court's ruling to exclude evidence cannot be raised unless the party makes an offer of proof in the trial court as to the substance of excluded evidence." *Parker*, 2022 WY 3, ¶ 9, 501 P.3d at 1256 (citing W.R.E. 103(a)(2); *In re Paternity of HLG*, 2016 WY 35, ¶ 29, 368 P.3d 902, 909 (Wyo. 2016); *Contreras v. Carbon Cnty. School Dist. No. 1*, 843 P.2d 589, 596 (Wyo. 1992)).  Mr. Gill did not make any offer of proof about the substance of Mr. Bates's excluded testimony.  Without such an offer of proof, it is impossible for us to determine whether the excluded testimony would have been relevant and admissible or to determine whether the district court improperly excluded this testimony. *Parker,* ¶ 10, 501 P.3d at 1256.  Thus, Mr. Gill did not properly preserve this issue for our review. *Id.*

## B.  Should Mr. Hunt have been allowed to testify as a rebuttal witness?

[¶46]  Mr. Gill argues the district court abused its discretion when it precluded Rick Hunt from testifying as a rebuttal witness.  After saying he would "wrap up" with the witnesses in his case-in-chief, but before he officially rested, Mr. Gill asked to call Mr. Hunt as a rebuttal witness.  Ms. Lockhart objected to Mr. Hunt being called as a rebuttal witness when she had not yet put on any evidence.  After a brief pause in the proceedings, Ms. Lockhart officially rested without calling any witnesses.  Mr. Gill then renewed his request to call Mr. Hunt.  Ms. Lockhart objected because Mr. Hunt had not been listed as a witness, and there was "no room for any rebuttal" because she had not put on a case.  The district court found Mr. Hunt could not be called as a rebuttal witness when Ms. Lockhart had not put on any evidence.

[¶47]  We have recognized rebuttal testimony "should ordinarily be limited to that which will relieve a litigant who . . . has at the trial been surprised and placed at an unfair disadvantage." *Davis v. Consol. Oil & Gas, Inc.*, 802 P.2d 840, 846 (Wyo. 1990) (quoting *Barber v. State Highway Comm'n*, 342 P.2d 723, 726–27 (1959)).  We have explained:

> The purpose of calling a rebuttal witness is to rebut evidence presented by the defense, not to bolster evidence already presented.  Rebuttal evidence is . . . proper if it tends to refute or contradict the effect of the opponent's evidence . . . or to explain the effect of the opponent's evidence; however, it is improperly admitted if the rebuttal evidence concerns issues not raised by the opponent.

*Parker*, 2022 WY 3, ¶ 16, 501 P.3d at 1257 (internal quotation marks and citation omitted).  Although Ms. Lockhart challenged Mr. Gill's evidence through cross-examination, she did not put on any evidence of her own.  Consequently, there was no evidence to refute through a rebuttal witness.  Mr. Hunt's testimony would only have served to bolster evidence already presented or to address issues not raised by Ms. Lockhart.  The district court could

have reasonably concluded it would have been improper to allow Mr. Hunt to testify as a rebuttal witness, and the district court did not abuse its discretion by excluding his testimony.[15]

### C. Should Mr. Hunt have been allowed to testify in Mr. Gill's case-in-chief?

[¶48] Mr. Gill argues Mr. Hunt should have been allowed to testify in his case-in-chief because Rule 26 of the Wyoming Rules of Civil Procedure did not apply to this proceeding. At the hearing, Mr. Gill argued he did not have to list Mr. Hunt as a witness because this was an action to enforce an arbitration award, which was expressly exempted from Rule 26's initial disclosure requirements. The district court declined to rule on whether Rule 26 applied to this case, finding Mr. Gill had an inherent obligation to disclose his witnesses and he had agreed to do so.

[¶49] We have not addressed whether Rule 26 applies in a post-judgment motion to enforce an arbitration award. However, we cannot resolve that question in this case because Mr. Gill voluntarily agreed to comply with Rule 26 and filed a witness list pursuant to the rule. Mr. Hunt was not disclosed on that list. Because Mr. Gill agreed to disclose his witnesses pursuant to the rule and did not list Mr. Hunt, the district court could have reasonably concluded Mr. Hunt's testimony should not be allowed. However, the district court never actually ruled Mr. Hunt could not testify in Mr. Gill's case-in-chief. The district court made clear on the record the decision not to call Mr. Hunt as a witness in his case-in-chief was made by Mr. Gill's attorney, and it was not the result of any ruling the court had made. Because Mr. Gill never properly asked to call Mr. Hunt as a witness in his case-in-chief and the district court never made a ruling precluding his testimony, there is no ruling for us to review on this issue.

### D. Did the district court abuse its discretion when it denied the motion to allow additional evidence?

[¶50] As a final argument, Mr. Gill asserts the district court abused its discretion by denying his motion to allow additional evidence. He asserts the judgment remains unsatisfied, and the district court had the discretion to hold additional enforcement hearings. "Post-judgment enforcement and execution proceedings are addressed to the sound discretion of the trial court and are reviewed on appeal only for an abuse of discretion." *Zaloudek v. Zaloudek*, 2010 WY 169, ¶ 7, 245 P.3d 336, 339 (Wyo. 2010) (citing *Burnett v. Steeley*, 2008 WY 94, ¶ 16, 190 P.3d 132, 135–36 (Wyo. 2008); *Woods v. Wells Fargo Bank Wyo.*, 2004 WY 61, ¶ 19, 90 P.3d 724, 731 (Wyo. 2004)). The district

---

[15] We have previously held a district court has discretion to admit evidence that would be admissible during a party's case-in-chief when offered in rebuttal. *See e.g., Davis,* 802 P.2d at 846 (citing *Gies v. Boehm*, 329 P.2d 807 (Wyo. 1958); *Hunt v. City of Laramie*, 181 P. 137 (Wyo. 1919)). However, those cases are distinguishable from the case at hand because the defendants in those cases all presented some evidence, making it proper to allow rebuttal evidence.

court had the discretion to hold multiple hearings on the motion to enforce. *See generally Ultra Res., Inc.*, 2015 WY 40, ¶ 36, 346 P.3d at 894–95 (stating the district court held a "series of hearings" on the motion to enforce over a three-year period). We must decide whether the district court abused its discretion by not having another hearing or considering additional evidence.

[¶51] The order denying Mr. Gill's motion to allow additional evidence did not contain any rationale for the district court's decision. Had the district court decided to hold another hearing and receive testimony from Mr. Hunt, he arguably would have answered many of the district court's unresolved questions about Fish Creek's work. However, we have recognized "[a] party will not be allowed 'another bite of the apple' in order to prove an element of their claim." *Pekas v. Thompson*, 903 P.2d 532, 537 (Wyo. 1995) (citing *Downing v. Stiles*, 635 P.2d 808, 817 (Wyo. 1981). The district court could have reasonably concluded it was improper to give Mr. Gill a second chance to prove a missing element of his claim regarding the amounts Ms. Lockhart owed for Fish Creek's work. In addition, as discussed above, Ms. Lockhart rested without calling any witnesses. Therefore, the district court could have reasonably concluded Mr. Gill's motion was another attempt to provide improper rebuttal evidence. The district court did not abuse its discretion when it denied Mr. Gill's motion to present additional evidence.

### III. Was Mr. Gill required to present expert testimony to satisfy his burden of proving the Fish Creek Invoices were reasonable?

[¶52] As an additional issue, Ms. Lockhart asserts Mr. Gill was required to offer expert testimony to meet his burden of proving the infrastructure costs were reasonable. In support of this assertion she cites *Hatch v. Walton*, 2015 WY 19, ¶ 29, 343 P.3d 390, 396 (Wyo. 2015).[16] In *Hatch*, we held expert testimony was required to prove the builder had breached the implied warranty that the house would be built in a skillful and workmanlike manner. ¶¶ 29–30, 343 P.3d at 396. We have also previously held expert testimony is generally required to establish the standard of care in professional negligence cases. *Garrison v. CC Builders*, 2008 WY 34, ¶ 23, 179 P.3d 867, 874 (Wyo. 2008) (citing *Roybal v. Bell,* 778 P.2d 108, 112 (Wyo. 1989); *Govin v. Hunter,* 374 P.2d 421, 422 (Wyo. 1962)). In addition, in *Garrison v. CC Builders, Inc.*, we accepted the parties' assertion expert testimony was required to prove reasonable costs under a "cost plus" building contract, and we applied that proposition to the determination of that case. 2008 WY 34, ¶ 23, 179 P.3d at 874. However, we did not adopt a bright-line rule requiring expert testimony to establish the reasonableness of construction costs. In fact, we have eschewed formulating bright-

---

[16] Ms. Lockhart also cited cases from California, including an unpublished opinion. We have previously recognized unpublished decisions do not carry any precedential value. *Worman v. BP Am. Prod. Co.*, 2011 WY 54, ¶ 8 n. 3, 248 P.3d 644, 647 n. 3 (Wyo. 2011). Although the other cases cited by Ms. Lockhart suggest California has required expert testimony to establish repair costs in certain cases, they do not support that such a rule exists in Wyoming.

line rules for expert testimony:

> We cannot formulate any bright[-]line rule categorizing kinds of expert testimony as either helpful or not helpful. In *Krahn v. Pierce,* 485 P.2d 1021, 1026 (Wyo. 1971), we recognized this difficulty when we noted that "whether in any given case, the expert testimony is necessary to aid the jury in its search for the truth depends upon such a variety of factors readily apparent only to the trial judge that we must depend heavily upon his judgment.

*Anderson v. Louisiana-Pacific*, 859 P.2d 85, 87 (Wyo. 1993). We decline Ms. Lockhart's invitation to adopt a bright-line rule requiring expert testimony to establish the reasonableness of construction costs and find it is better practice for the district court to make that determination on a case-by-case basis.

## CONCLUSION

[¶53] The district court's findings were not clearly erroneous, and Mr. Gill failed to meet his burden of establishing his damages pertaining to Fish Creek's invoices to a reasonable degree of certainty. The district court did not abuse its discretion by precluding Mr. Hunt from testifying either at the evidentiary hearing or after it had announced its oral ruling. We decline to adopt a bright-line rule requiring expert testimony to establish the reasonableness of construction costs. The district court's orders are affirmed.